___

**SO ORDERED,**



*Judge Selene D. Maddox*

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.
___

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**

| | |
|---|---|
| IN RE: MICHAEL JAMARERO WILLIAMS and ANGELA DENIECE WILLIAMS  DEBTOR(S). | CASE NO.: 19-10390-SDM  CHAPTER 13 |
| PHILLY FINANCE, INC. | PLAINTIFF |
| V. | ADV. PRO. NO.: 20-01033 |
| MICHAEL JAMARERO WILLIAMS et al | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER GRANTING CREDITOR'S MOTION FOR ATTORNEY'S FEES AND EXPENSES IN PART AND DENYING IN PART (DKT. #36)**

**THIS CAUSE** comes before the Court on the Plaintiff's *Motion for Attorney's Fees and Costs* (Dkt. #36). On April 14, 2021, the Court conducted a telephonic hearing on this matter with counsel for both parties participating, as well as the Codefendant/Codebtor, Angela Deniece Williams. At the conclusion of the hearing, the Court deferred a final ruling until submission by

Plaintiff's counsel of a Revised Itemization of Expenses, followed by Defendants' Response thereto. Those documents have been submitted by the parties, and the Court is ready to rule.

## I. JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. §157(a) and the Standing Order of Reference signed by Chief District Judge L.T. Senter and dated August 6, 1984. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A)(matters concerning the administration of the estate), (I)(determination as to the dischargeability of particular debts), and (O)(other proceedings affecting the liquidation of assets of the estate or the adjustment of the debtor-creditor relationship).

## II. FACTS AND PROCEDURAL POSTURE

The Plaintiff is Philly Finance, Inc. ("Philly"). The Defendants are Michael Jamarero Williams and Angela Deniece Williams, the Debtors in the underlying Chapter 13 case (the "Debtors"). The Debtors filed for Chapter 13 on January 28, 2019, with Jim Arnold ("Arnold") as their attorney-of-record. On June 9, 2020, Philly filed the instant adversary proceeding to determine the dischargeability of the debt owed to it. On June 15, 2020, a mere six days after the commencement of the adversary proceeding, the parties submitted a proposed agreed judgment signed by Arnold and Philly's then-counsel Michelle Van Norman ("Van Norman") which purported to resolve the case, with the Debtors to pay Philly $4,228.77 as a nondischargeable debt and Philly to waive its attorney's fees. The Court, *sua sponte*, held a hearing to determine whether there was a rational basis for entering the proposed agreed judgment which contained terms the Court considered unduly onerous to the Debtors.[1]

---

[1]Specifically, the agreed order would have obligated the Debtors to treat the debt owed to Philly as nondischargeable with a payoff amount equal to the entirety of the underlying Promissory Note ($4,228.77 as of the petition date). More importantly, it also would have required the Debtors

Unsatisfied by Arnold's explanation and there being no adequate (or any) explanation proffered in support of the proposed agreed judgment, the Court denied the proposed agreed judgment in an order dated July 8, 2020 (Dkt. #6), which *inter alia* set a deadline for Arnold to respond to the Complaint in the adversary proceeding. Arnold timely filed an Answer on behalf of the Debtors on July 17, 2020 (Dkt. #9). This answer, for the most part, consisted of general denials of the Complaint, with the last paragraph simply restating the questions raised by the Court at the earlier hearing on the proposed agreed judgment:

> Debtors would show that the funds obtained from Philly Finance were not obtained fraudently (sic). That under the 2017 Promissory Note, the Debtors only received $503.45 direct from Philly Finance, with the balance of the debt representing money used to pay off prior loans, insurance and other fees. That the balance of the debt with Philly Finance is dischargeable in this bankruptcy case.

On July 30, 2020, attorney Stacey Moore Buchanan ("Buchanan") of Jones Walker LLP ("Jones Walker") entered an Appearance on behalf of Philly and effectively took over its representation. On August 3, 2020, Philly and the Debtors entered a Stipulation of Discovery signed by counsel for both parties, and the next day, the Court entered a Scheduling Order setting December 3, 2020, as the deadline for discovery. That same day, a second attorney from Jones Walker, Adam Stone ("Stone"), made his Entry of Appearance on behalf of Philly.

---

to pay the note outside the Chapter 13 plan while plan confirmation was still pending in just twenty-four monthly payments of $175.00 plus a final payment of $28.77. Finally, the Creditor would be permitted to seek the outstanding balance in its entirety in the event of any delinquency exceeding fifteen days. The Court's concerns about these terms only deepened at the telephonic hearing held in this matter on July 7, 2020. During questioning from the bench, the Court noted that, under the Promissory Note, the Debtors only received $503.45 direct from Philly, with the balance of the debt representing money used to pay off prior loans, insurance, and other fees. When asked by the Court why he agreed to such terms on behalf of his client, Arnold simply described his acquiescence to the agreed judgment as "an oversight." In its order rejecting the agreed judgment, the Court characterized Arnold's actions (or inactions) as "a bit of an understatement."

Beginning on November 3, 2020, Philly through Buchanan served notice of the discovery requests which it had propounded to the Debtors, including Interrogatories and Requests for Admissions. Throughout that November, Buchanan also had subpoenas issued on twelve payday loan companies and finance companies[2], purportedly to pursue evidence that the Debtors had prior debts with some or all of those companies which were not disclosed to Philly at the time the Debtors entered into the loan agreement with it. Buchanan's time spent on these subpoenas is described in the billing records submitted to the Court, along with the instant motion, as subpoenas for "potential undisclosed lenders." These billing records further show that between October 29, 2020 and December 3, 2020, Buchanan billed over thirty hours for entries regarding subpoenas for "potential undisclosed lenders." During that same time, Buchanan's paralegal, Michelle Green ("Green"), billed an additional 15.6 hours of work on the subpoenas.

In the meantime, Arnold did not respond in any way to Philly's discovery requests, nor did he ever file any discovery requests on behalf of his clients. On December 17, 2020, Philly filed its Motion for Summary Judgment which was premised mainly on the Debtors' failure to respond to the Requests for Admissions, as this failure to respond to such requests had the legal effect of having them deemed admitted pursuant to Federal Rule of Civil Procedure 36(a)(3). During the telephonic hearing on the summary judgment motion, Arnold conceded that he had not responded to the Requests for Admissions but proffered no explanation for his failure to do so.[3]

---

[2]The companies to be subpoenaed were Approved Cash Advance Centers (Mississippi), LLC; AAFA of Mississippi, Inc. dba Check Advance; Check Now Inc. dba Check Now; Express Check Advance of Mississippi, LLC dba Express Check Advance; World Finance Company of Mississippi, LLC; Family Choice Financial, Inc.; Title Cash of Laurel, Inc., dba Title Cash; Anytime Cash Solutions, LLC dba MoneyMan; Tower Loan of Mississippi, LLC; Speedee Cash of Mississippi, Inc.; Fidelity National Loans, Inc.; and Ackerman Finance, Inc.

[3]Arnold did indicate that, for some reason, he thought discovery had been stayed by a prior order of the Court. No order of this Court contained any language staying discovery. In fact, the discovery deadlines were set after a stipulation was submitted by both parties and signed by

For the reasons set forth in the Court's subsequent order dated March 11, 2021 (Dkt. #35), the Court granted Philly's Motion for Summary Judgment, finding that the Debtors owed Philly a nondischargeable debt in the amount of $4,228.77. The Court further directed Philly to file within twenty days of the hearing date a motion for attorney's fees and expenses, with said motion to include the basis for which the award is requested and an itemized list of attorney's fees and legal expenses incurred. The Debtors were granted an additional twenty days after the filing of Philly's motion in which to respond or object.

The next day, Philly timely filed the instant Motion for Attorney's Fees and Expenses accompanied by an affidavit from Buchanan and a document entitled "JONES WALKER LLP'S ITEMIZATION OF FEES AND EXPENSES." To the Court's astonishment, the motion requested ***$27,033.00*** in attorney's fees plus $515.56 in expenses for a total award of ***$27,548.56***, an amount more than ***six-and-a-half times*** the judgment obtained against the Debtors. Unsurprisingly, the Debtors objected to this extraordinary request, and the Court set the matter for hearing.

On April 14, 2021, the Court conducted a telephonic hearing on the instant motion. Attorney Jeff Barbour ("Barbour") entered an appearance on behalf of Philly as Buchanan was called upon to testify. Barbour argued that discovery was necessary in this matter because of the Debtors' numerous prior bankruptcy filings which required investigation to determine which of their debts had previously been discharged and whether any prior debts not discharged were later omitted by the Debtors in their loan application. Per Barbour, the discovery process was further complicated by the inconsistent spelling of the Debtors' names in some of their prior loan agreements. Barbour also asserted that while litigation in general is "expensive," the attorney's

---

Arnold, and that stipulation was entered after the order to which Arnold seemed to allude. *See* Dkt. #12. Arnold presented the same vague assertion that he thought discovery had been stayed at the most recent hearing, and the Court remains as baffled by it as before.

fees incurred in this case had already been "discounted" by a reduction in Buchanan's hourly rate from $310.00 to $250.00 and by a waiver of all attorney's fees incurred by Philly prior to Buchanan's entry of appearance.

Arnold's rebuttal was brief and consisted mainly of the bald assertion that the fee award requested was "unreasonable and unconscionable." Arnold also claimed that according to the original proposed agreed judgment which was rejected by the Court, Philly had agreed to waive all attorney's fees in exchange for the Debtors' agreeing to Philly's entire claim as a nondischargeable debt outside the plan and under accelerated terms. To the Court's surprise, Arnold also stated that he agreed to those terms because of the Debtors' potential exposure in the adversary proceeding due to their failure to disclose prior loan obligations to Philly. When asked by the Court why Arnold did not present any such argument at the original hearing on the proposed agreed judgment conducted on July 7, 2020, Arnold claimed to have done so. Out of an abundance of caution, the Court has since reviewed the audio recording of the July 7, 2020 hearing to confirm its recollection that Arnold presented no arguments whatsoever as legal justification for the proposed agreed judgment and simply described his acquiescence to it as "an oversight."

Barbour then called Buchanan as a witness, and she testified that in her career, she had represented creditors in over 100 dischargeability actions and was well-versed in this area of the law. Her billing rate in this case was $250.00 per hour, which represented a reduction from her normal rate of $310.00 per hour. She was assisted by Green, a paralegal who billed at $185.00 per hour, and she received minimal assistance from two other attorneys, Stone and Kaytie M. Pickett ("Pickett"). The Itemization reflects that Stone billed $125.00 (0.50 hours at $250.00 per hour) for unspecified assistance with the summary judgment motion, while Pickett billed $180.00 (0.5 hours at $360.00 per hour) for "drafting potential questions for the Court and answers with citations to

authority" with reference to the hearing on the summary judgment motion. On cross examination, neither the Court nor Arnold asked Buchanan any substantive questions regarding the merits of her motion, and the hearing focused principally on whether Arnold had any justification for his failure to respond to discovery requests.

Buchanan asserted that the fee application satisfied the *Johnson* factors outlined by the Fifth Circuit for determining the reasonableness of an attorney's fee award. She also reiterated that the Itemization excluded all legal work performed prior to Jones Walker's entry into the case and that the firm waived all billing for the fee application itself. However, when questioned by the Court about her own reduced fee rate from $310.00 to $250.00 per hour, Buchanan was unable to explain to the Court's satisfaction why the Itemization still appeared to bill for her at $310.00 per hour for some entries and $250.00 per hour for others. While Buchanan was fairly confident that the final total accurately reflected a billing rate of $250.00 per hour for all Buchanan's work, the Court, out of an abundance of caution, directed her to provide either an updated itemization which clearly reflected the proper billing rate or else an affidavit swearing to that effect.

The Court's caution was justified. The next day, Buchanan submitted a Revised Itemization ("the Revised Itemization") accompanied by an Affidavit acknowledging that the previous Itemization contained entries for both Buchanan and Greene which were billed above the discounted rate. As a result of the corrections made in the Revised Itemization, the proposed attorney's fees award was reduced from $27,033.00 to $26,032.50.

On April 16, 2021, Arnold timely filed his Response to the Revised Itemization. The Court has reviewed the Plaintiff's Affidavit and Revised Itemization and the Defendants' Response and is prepared to rule.

### III. DISCUSSION

A.  **Fee applications in nondischargeability actions.**

While the Bankruptcy Code does not expressly award attorney's fees to a creditor who is successful in a nondischargeability action, creditors with a valid contractual right to such fees may pursue them through a fee application.[4] *In re Staten*, 559 B.R. 666, 669-70 (Bankr. S.D. Miss. 2016). State law generally governs whether attorney's fees are permissible at all and also whether a specific request for fees is reasonable. *Staten*, 559 B.R. at 670 (citing *Mathis v. Exxon Corp.,* 302 F.3d 448, 461 (5th Cir. 2002)). In Mississippi, determinations regarding the reasonableness of attorney's fees are governed by Rule 1.5 of the Mississippi Rules of Professional Conduct ("Rule 1.5"), which is "almost identical" to the lodestar method and the *Johnson* factors used by the Fifth Circuit in reviewing fee applications. *Mauck v. Columbus Hotel Co.*, 741 So. 2d 259, 272 (Miss. 1999)(comparing Miss. R. Prof'l Conduct 1.5 and lodestar method outlined in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir. 1974) *overruled on other grounds by Coston v. Bank of Malvern (In re Coston),* 991 F.2d 257, 260-61 (5th Cir. 1993)). Thus, both state and federal case law are instructive in determining whether an award of attorney's fees is reasonable or not. *Staten*, 559 B.R. at 670.

In considering the case *sub judice*, the Court has found two recent cases from the Southern District of Mississippi to be highly instructive: the aforementioned *In re Staten* and an unpublished opinion from *In re Peters*, No. 15-02199-KMS, 2017 WL 1173597 (Bankr. S.D. Miss. Mar. 28, 2017). Both opinions were issued by Judge Samson, who cogently explained the applicability of the *Johnson* factors in cases strikingly similar to the one at bar. More specifically, both cases

---

[4]The loan agreement submitted as an exhibit to the Complaint contains a clause outlining the Debtors' obligation to pay Philly's attorney's fees on its second page. *See* Dkt. #1 at pg. 8. At no point did Arnold contest Philly's right to seek attorney's fees in this matter.

actually involve the same attorney, as Buchanan also represented the creditors in both *Staten* and *Peters*.

In *Staten*, Pitko Finance ("Pitko") brought a nondischargeability action against Staten (the Debtor), and after the parties agreed to a nondischargeable judgment in the amount of $1,347.90 with the Court to determine the proper amount of attorney's fees, Pitko requested $5,080.00 in attorney's fees and $385.00 in expenses. 559 B.R. at 669. The motion included an itemization averring that Buchanan had billed 32.90 hours on the adversary proceeding at $200.00 per hour. *Id.* All parties conceded that the promissory note between Pitko provided for reasonable attorney's fees. *Id.*

After a hearing on the matter, the *Staten* court applied the procedure for determining the reasonableness of attorney's fees under Mississippi law. *Id.* at 670. This procedure is a two-step process. First, the court must determine a "reasonable fee, based on the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* (quoting *In re Estate of Gillies*, 830 So.2d 640, 646 (Miss. 2002)). This fee, which is referred to as "the lodestar," is then reviewed under the eight factors listed in Rule 1.5, which are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent.

*Staten*, 559 B.R. at 671.

Judge Samson began by finding Buchanan's rate of $200.00 an hour to be reasonable and multiplying that by the 25.4 billable hours for which she sought payment to yield a lodestar amount of $5,080.00. *Id.* The court then applied the Rule 1.5 factors, beginning with the fourth factor, "the amount involved and the results obtained," and concluded this factor alone warranted a substantial reduction from the award sought. *Id.* The court noted that other courts had found requested attorney's fees that were "almost double" the amount in dispute to be excessive and listed several cases where courts declined to grant attorney's fee awards in excess of the amount of the recovery. *Id.* at 671-72. As the agreed amount of the underlying debt was only $1,347.90 and the lodestar amount was $5,080.00 (nearly four times as much), the court concluded that the fourth Rule 1.5 factor merited a 75% reduction in fees down to $1,270.00. *Id.* at 672.

As alternative grounds for reducing the attorney's fees, Judge Samson also considered the third factor, "the fee customarily charged in the locality for similar legal services," and noted that in prior nondischargeability actions, the fees awarded were generally only one-third of the total debt. *Id.* at 673 (citing cases granting attorney's fees in nondischargeability actions that were limited to approximately one-third of the recovery). Judge Samson also considered the first factor, "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly," and the court found that much of the time billed was for discovery preparations which were disproportionate in light of the amount in controversy. *Id.* at 673-74. While both of these factors supported a reduction of the amount of fees to be awarded, Judge Samson declined to further reduce the attorney's fee award in light of her previous 75% reduction. *Id.* Finally, the court found that the remaining Rule 1.5 factors did not support further modification of the lodestar.

Judge Samson's analysis in *Peters* followed a similar course. There, Buchanan (then representing Hometown Credit LLC) submitted a fee itemization requesting $11,388.75 in attorney's fees and $600.00 in expenses. *Peters,* 2017 WL 1173597, at *1. The itemization indicated that both Buchanan and co-counsel John S. Simpson billed for services at a rate of $200.00 per hour for 47.9 hours and $275.00 per hour for 6.25 hours, respectively. *Peters*, 2017 WL 1173597, at *1, 4. The court found their respective hourly rates to be reasonable. *Id.* at *4.

However, the court also expressed dissatisfaction with Buchanan's use of "block billing" for her time spent preparing subpoenas and in trial preparation. *Id.* (defining block billing as "a billing method in which an attorney lumps together time spent working on a case, rather than enumerating the time spent on specific tasks"). Judge Samson's objection to block billing was that it "impedes a court's ability to determine the reasonableness of the hours spent on individual tasks and has served as the basis for courts to issue a flat reduction of a specific percentage from an award of attorney's fees." *Id.* (quoting *In re Adams*, 516 B.R. 361, 372 (Bankr. S.D. Miss. 2014)).

Significant for this Court's consideration of the instant motion, Judge Samson specifically considered the time spent by Buchanan on preparing subpoenas to be served on various finance companies, subpoenas which were, in the court's view, similar in form to subpoenas Buchanan had likely used in similar cases. *Id.* Between that fact and Buchanan's failure to demonstrate with specificity what "trial preparation" she engaged in for a total of 6.5 hours, the court felt justified in decreasing Hometown Credit's fees for those entries by 50%, thereby reducing the lodestar amount to $8,420.00 for Buchanan and $1,718.75 for Simpson.

The *Peters* court then applied the Rule 1.5 factors to the lodestar and, as was the case in *Staten*, found that the fourth, third, and first factors merited a substantial reduction in the amount of the award. *Id.* at *5. Specifically, the court noted that the underlying debt was only $2,903.89,

while the lodestar was $10,138.75, more than triple the amount of the debt. *Id.* Judge Samson also reiterated her view that the "customary fee" for nondischargeability actions over small consumer loans was "one-third the amount of the indebtedness." *Id.* Finally, the court noted that the questions presented in *Peters* were not novel. *Id.*

Nevertheless, while Judge Samson noted the prior reduction of 75% in *Staten*, the court found an important point of distinction in *Peters*. Specifically, the debtor in the latter case rejected Buchanan's earlier settlement offer, but when it came time for trial, Peters did not appear to testify, and Judge Samson concluded that "the debtor cannot avoid paying for fees that she caused the creditor to reasonably incur." *Id.* at 7. Accordingly, the court limited the reduction in the loadstar to 50% instead of 75%, resulting in a final award of $5,669.38 for attorney's fees and expenses which were added to the underlying nondischargeable debt of $2,903.89.

**C.    The Case *Sub Judice*.**

Applying the reasoning of *Staten* and *Peters* to the instant case, the Court makes note of the following salient facts. First, all of the work described in the Revised Itemization was for work done ***after*** this Court's July 8, 2020 order denying the proposed agreed judgment. The Court considers this fact to be relevant because prior to Buchanan's involvement in the case, ***the parties had reached a settlement***. Granted, the Court refused to approve that settlement because it included a number of unduly onerous terms that were unfair to both the Debtors and to the unsecured creditors. More importantly, the evidence provided strongly indicated a failure of Debtors' counsel to perform proper diligence in signing the proposed agreed judgement without any justification that was presented to the Court.[5]

---

[5]Indeed, had Arnold simply presented a persuasive justification for agreeing to the proposed settlement when asked to do so back at the July 7, 2020 hearing, the Court might well

Nevertheless, at the hearing on the proposed order, the Court invited the parties to continue settlement talks in pursuit of an agreement the Court would approve. Consequently, the Court is troubled by the fact that Buchanan, her co-counsel, and her paralegal collectively put in **_113.40 billable hours_**, but at no point (at least as far as the Court can determine from the Revised Itemization) did Buchanan or anyone else representing Philly reach out to Arnold to discuss the possibility of settlement under terms the Court would find acceptable.[6]

Instead, the Revised Itemization reflects that Buchanan initially focused primarily on preparing and serving subpoenas on "potential undisclosed lenders." The Court realizes that if this matter had proceeded to trial, it would have been incumbent on Philly to prove by preponderance of the evidence that the Debtors had in fact taken out prior loans which had not been previously discharged and which the Debtors failed to disclose when applying for a loan with Philly. However, by this Court's rough estimate, well over thirty (30) billable hours were expended on these subpoenas, and the amount of the attorney's fees attributable *solely* to the preparation, service, and review of them is just over twice the amount of the underlying debt.[7] Furthermore, the Court cannot identify with specificity exactly how much time was spent on these subpoenas

---

have approved the agreed judgment at that time, thus eliminating the need for all the attorney's fees for which Buchanan has subsequently billed to date.

[6]Of course, those same billing records also indicate that Arnold didn't reach out to the Creditor to pursue an alternative settlement either, but he is not the one before the Court seeking over $26,000.00 in attorney's fees.

[7]The Revised Itemization reflects that both Buchanan and Green performed work relating to the twelve subpoenas. Green's work was billed at $185.00 per hour, and Buchanan's at $250.00 per hour. The Court estimates that Buchanan billed 22.8 hours for work pertaining to the subpoenas for a total of $5,700.00 and that Green billed 15.5 hours for a total of $2,867.50. The Court estimates the total billing for the subpoenas alone was approximately $8,567.50 or just over twice the amount of the underlying debt. By comparison, in *Peters*, Buchanan prepared and served nine subpoenas, for which she only billed 5.1 hours at $200.00 per hour or approximately $1,000.00.

because of Buchanan's use of block billing, a practice whose problematic nature Judge Samson described in *Peters*.

Other issues of concern to the Court pertain to Stone, another Jones Walker attorney assigned to this case. If the Court understands the Revised Itemization correctly, the entries dated 7/30/2020 and 8/3/2020 reflect that a total of $420.00, later reduced to $396.00 in the Revised Itemization, was billed for work involved in simply getting Stone registered to e-file documents to the Court through its CM-ECF system. The Court fails to see why the Debtors should have to pay for these entries just because, by happenstance, they were the losing parties in the case where Stone first appeared before a bankruptcy court in the Northern District of Mississippi.

An additional $180.00 was billed by Pickett for 0.50 hours spent assisting Buchanan "with motion hearing preparation by drafting potential questions for the court and answers with citations to authority." This was Pickett's sole involvement with the case, and the Court fails to see what sort of assistance was necessary for a summary judgment motion premised on a complete failure to respond to discovery requests.

   *1.    Calculating the lodestar.*

As noted above, the Court must first calculate the lodestar, i.e. a reasonable hourly rate multiplied by a reasonable number of hours billed. The hourly rates presented by the Revised Itemization include (a) $250.00 per hour for Buchanan and Stone, (b) $360.00 per hour for Pickett, and (c) $185.00 per hour for Green. The Court finds that the hourly rates for Buchanan, Stone, Green, and Pickett are reasonable.

Turning to the matter of hours reasonably expended working on this case, the Court finds issues that are considerably more problematic. The most important is the amount of time spent on preparing and serving subpoenas on "potential undisclosed lenders": 22.8 hours for Buchanan at

$250.00 per hour and 15.5 hours for Green at $185.00 per hour for a total of $8,567.00. The Court acknowledges that an inquiry into the Debtors' prior debts is generally a legitimate target for discovery in nondischargeability actions of this nature. In this specific case, however, the Court finds that Buchanan and Green's time spent on the subpoenas was both excessive and ultimately unnecessary.

To reiterate, the parties had tentatively agreed to a proposed judgment, and while the Court rejected it, the Court also made it clear that it would entertain further settlement proposals from the parties. Instead of attempting to resolve the Court's concerns about the proposed settlement, Buchanan opted to prioritize inquiries into "potential undisclosed lenders." And the word potential is significant. Because Arnold did not respond to Philly's Requests for Admissions and the Debtors were subsequently deemed to have admitted all the elements needed to prove Philly's claim, this Court has no idea whether the subpoenas issued would have ever born fruit in the form of evidence of actual undisclosed lenders whose debts were not discharged in a prior bankruptcy. If not, then the subpoenas were nothing more than a fishing expedition for which the Debtors should not be forced to pay.

This is not to say that such subpoena work is per se unreasonable. If Buchanan had waited for Arnold's response deadline to run without any responses made, Philly's Motion for Summary Judgment could have been made and granted on the same grounds but without the need for excessive discovery pertaining to "undisclosed potential lenders." Alternatively, if Arnold had replied to the discovery requests with a denial that there were any such undisclosed lenders, Philly would have been fully justified in issuing the subpoenas, and if the discovery deadline was looming, the Court certainly would have granted an extension.

Neither of those scenarios occurred. Instead, Buchanan incurred attorney's fees that were more than twice the amount of the underlying debt and which were ultimately completely unnecessary to the disposition of the adversary proceeding. Under the specific facts of this case, the Court finds the fees requested for time spent preparing and serving the subpoenas to be unreasonable. Accordingly, Philly's request for reasonable attorney's fees is reduced by $8,567.00 from $26,032.50 to $17,465.50.

In addition, the Court finds unreasonable the $396.00 charged by Green to get Stone registered to file documents via CM/ECF and the $180.00 charged by Pickett for assisting Buchanan in preparing for the hearing on the Motion for Summary Judgment. By that point in the proceedings, resolution of the summary judgment motion was straightforward due to the Debtor's failure to respond to Philly's Requests for Admissions, and Buchanan was not asked any questions of a substantive nature at the hearing. Accordingly, the $396.00 charged by Green and the $180.00 charged by Pickett will be disallowed. These deductions yield a lodestar of $16,889.50.

### 2. *Applying the Rule 1.5/Johnson factors.*

Turning to the Rule 1.5 factors, the Court agrees with the reasoning employed in *Staten* and *Peters*. In applying the fourth factor, "the amount involved and the results obtained," this Court finds that a substantial reduction from the award sought is warranted. Even after the Court's earlier disallowances and reductions, the lodestar is still $16,889.50, which is about four times the $4,228.77 in damages sought. Such a ratio is plainly excessive, and following Judge Samson's lead, the Court will reduce the lodestar by 75% down to $4,222.38

The third and first factors provide further support for this reduction. The first factor, "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly," militates in favor of a lodestar reduction. Simply put, the

time and labor spent on the work performed on behalf of Philly, work that was neither novel nor difficult, was disproportionate in light of the amount in controversy.

Likewise, in considering "the fee customarily charged in the locality for similar legal services," the Court finds persuasive those cases sited in *Staten* indicating that a fee equal to about one-third of the total debt is usually the appropriate measure of attorney's fees in nondischargeability actions. However, the Court declines to adopt a firm rule that fees in excess of one-third the damages is per se unreasonable. In particular, while the requested attorney's fees were excessive and subject to reduction, the Court finds that there are grounds for awarding attorney's fees that are more than one-third of the recovery. Specifically, the Court notes that Arnold's failure to respond to discovery requests, combined with his earlier missteps in representing the Debtors, caused Philly to incur more in attorney's fees and expenses than it otherwise might have needed to. To paraphrase Judge Samson in *Peters*, the Debtors cannot avoid paying for attorney's fees that they caused Philly to reasonably incur.

Thus, while both the third and first factors support in principle a reduction of the amount of fees to be awarded, the Court declines to reduce the lodestar any further below the previous 75% reduction. The Court finds that the remaining Rule 1.5 factors do not support any further modification of the lodestar in either direction. Accordingly, the Court concludes that the proper measure of attorney's fees to be awarded to Philly is $4,222.38 which shall be added to the $4,228.77 already awarded to Philly in damages. The requested expenses in the amount of $515.56 are reasonable and shall not be disturbed. After adding the judgment, the approved attorney's fees, and the approved expenses, the total nondischargeable debt which the Debtors shall owe to Philly is equal to $8,966.71

In reaching this conclusion, the Court certainly does not mean to dictate what fees attorneys representing creditors may charge their clients. In this specific matter, the Court's sole concern is what a creditor's attorney may seek to recover in terms of attorney's fees and expenses from debtors, and the Court will remain ever vigilant when considering whether applications for attorney's fees to be assessed against debtors meet the standards of Rule 1.5 and *Johnson*.

## IV. CONCLUSION

Based on the foregoing findings of fact and conclusions of law, it is hereby ORDERED that Philly's *Motion for Attorney's Fees and Expenses* (Dkt. #36) is GRANTED in part and DENIED in part. Philly is hereby awarded $4,222.38 in attorney's fees and $515.56 in expenses, in addition to the previous award in the amount of $4,228.77 which was awarded to Philly in this Court's Order dated March 11, 2021 (Dkt. #35), for a total nondischargeable debt in the amount of $8,966.71. A separate Judgment to that effect shall be issued.

**##END OF ORDER##**